(Decided 13th January, 1893.)

---

THE COUNTY COMMISSIONERS OF ALLEGHANY COUNTY *vs.* THE NEW YORK MINING COMPANY OF ALLE-GHANY COUNTY.

*Assessment of Property for Taxation—Correction of Assessment—Notice of County Commissioners—Construction of secs. 137 and 145 of Art. 81 of the Code, relating to Correction and Increase of Assessments.*

The county commissioners, in their respective counties, have the exclusive power to levy taxes upon property duly assessed according to law, and they have also the power to appoint collectors to collect such taxes when levied; and they have also the exclusive power, after a general assessment made, to correct and add to such general assessment in the manner prescribed by law. But as they act under special and limited powers, whatever they may do by way of correction of, or in making additions to, the general assessment, must be strictly in accordance with the terms of the authority given them.

But if they act within the scope of their authority, and after complying with all the necessary conditions precedent prescribed,

such as giving the required notice, and the like, their judgment becomes final, and is not the subject of review by any other tribunal for the correction of mere informalities or irregularities in their proceeding, which may not involve the question of transcending authority.

If, however, they proceed without the warrant of law, in disregard of those matters prescribed as conditions precedent, their proceedings will be restrained by a Court of equity, as being illegal and void, unless there be some other mode of relief provided by law.

By sec. 137 of Art. 81 of the Code, the county commissioners and appeal tax Court are directed annually to correct the assessment of the property in their respective counties, and (1) to alter and correct the valuation of any property which may have been improperly valued, and to assess the same at its true value; (2) to alter and to correct the account of any person whose property, or any part thereof, may have been omitted in the former assessment, or may have been since acquired; and (3) if real estate or other property shall from any cause have increased or diminished largely and materially in value since the last levy, they shall correct, alter, and amend the assessment of the same, so as to conform to its present value. HELD :

That these large and important powers should not be attempted to be exercised in an arbitrary or capricious manner, or exercised in any case without due regard to the rights of the property owner. He must have a right to be heard, and that, too, before his rights are determined by the only tribunal that can hear him in defence of his rights.

By sec. 145 of said Art. 81 of the Code, it is provided that "before increasing the assessment of any property which has heretofore been assessed, or adding any new property, not valued and returned to them by the proper assessor or collector, it shall be the duty of the county commissioners or appeal tax Court, as the case may be, to notify the owner of such property, by a written or printed summons, containing such interrogatories in regard to such property as they may require to be answered on oath, and appointing a certain day for such owner to answer such interrogatories, either orally or in writing, and make such statement, or present such proof as he may desire in the premises; and such notice shall be served on such owner, or left at his place of abode, at least five days before the day of hearing

County Comm'rs of Alleghany Co. *vs.* New York Mining Co.

appointed in such summons; and such owner may answer such interrogatories contained in such summons, and may appear on such return day and answer the same under oath, orally, before such county commissioners or appeal tax Court, and may present such testimony as he may desire, and such county commissioners or appeal tax Court may think necessary and proper to be heard; and in case such owner, after being summoned, shall fail to answer in writing on oath, or to appear and answer orally such interrogatories, such county commissioners or appeal tax Court, after such return day has passed, may proceed to revalue and re-assess such property, or add such new property according to their best judgment and information in the premises; but no such revaluation and re-assessment shall be made by such county commissioners or appeal tax Court, without giving such notice." HELD :

1st. That until the property owner is duly notified and given an opportunity to come in and answer as to the valuation of the property proposed to be affected, or has failed to come in after receiving such notice, the county commissioners have no authority or power either to increase the valuation of property already valued and assessed, or to add thereto other property, not valued and returned to them by the proper assessors or collectors, as provided in the statute.

2nd. That if there be reasonable or colorable ground for supposing that property has been originally improperly valued by the assessors, it is the duty of the commissioners to give the notice required by the statute, and not to proceed to fix a revised and increased valuation of the property before any notice is given.

The county commissioners of A. County, acting upon the supposition that the property of a coal mining company had been originally improperly valued by the assessors, proceeded without notice, to fix a revised and increased valuation of the property. After the increased valuation had been determined upon and entered of record, a notice was given to the owner which ran thus: "That your property in District No. 12, has been altered and corrected as follows: 500 acres big vein coal, $200,— $100,000. Increase on the 500 acres big vein coal, which are now assessed at $300 per acre. Unless you appear before the board at its session of May 5th, 1891, and show cause why this alteration should not be made, the same will stand against you, and you will be taxed therefor at the next annual levy." This notice was dated the 20th of April, 1891, and by an agreement

County Comm'rs of Alleghany Co. *vs.* New York Mining Co.

filed in the cause it was admitted, "that the coal under the land of the plaintiff stood assessed upon the assessment books of the defendants at $300 per acre from the year 1880, down to 1891, when it was increased to $500 per acre by the defendants;" and although the notice was not issued until the 20th of April, the increased valuation had been made and entered of record on the 16th of April, 1891, and the commissioners, when questioned upon the subject as witnesses, admitted that they had thus fixed the increased valuation before giving the notice. On a bill filed by the mining company against said county commissioners for an injunction to restrain the collection of taxes alleged to have been illegally assessed, it was HELD:

1st. That the notice sent to the plaintiff was not such as the statute required.

2nd. That the action of the county commissioners in making said increased valuation was justified upon no principle of justice, whether in a tax Court or any other Court, apart from the express injunction of the statute prohibiting such mode of proceeding.

3rd. That it was a condition precedent to the rightful exercise of the power to correct the former assessment, that the statute law of the State applicable to the case should have been complied with, and the notice given as required, and inasmuch as such notice was not given, the increased valuation of the plaintiff's property was illegal and void.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and MCSHERRY, J.

*Benjamin A. Richmond,* for the appellants.

*R. T. Semmes,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This was an application for an injunction to restrain the collection of taxes, alleged to have been illegally

assessed. The bill was filed by the appellee against the County Commissioners of Alleghany County, and alleges that the defendants wrongfully and without warrant of law had undertaken to alter, and had in fact altered and increased, the valuation of the former assessment of the property of the plaintiff, situated in that county, and were about to enforce the taxes levied on such increased assessment or valuation; and that such increased assessment had been made without due and legal notice given as required by law. The defendants, by their answer, admit the fact of the alteration and increased assessment of the plaintiff's property, and that they were about to enforce the payment of the taxes on such increased valuation; but they deny that such increased assessment was unlawfully made.

There was proof taken, and upon consideration of such proof, and certain admissions made, the Court below granted the injunction and made it perpetual.

The County Commissioners, in their respective counties, have the exclusive power to levy taxes upon property duly assessed according to law, and they have also the power to appoint collectors to collect such taxes when levied, and they have also the exclusive power, after a general assessment made, to correct and add to such general assessment, in the manner prescribed by law. They act, however, under special and limited powers, and whatever they may do by way of correction of or in making additions to the general assessment, must be strictly in accordance with the terms of the authority given them. But if they act *within* the scope of their authority, and after complying with all the necessary conditions precedent prescribed, such as the giving of the required notice, and the like, their judgment becomes final, and is not the subject of review by any other tribunal, for the correction of mere informalities or irregularities in their proceeding, which may

not involve the question of transcending authority. If, however, they proceed without the warrant of law, in disregard of those matters prescribed as conditions precedent, their proceedings will be restrained by a Court of equity, as being illegal and void, unless there be some other mode of relief provided by law. This is the settled doctrine upon the subject, and was asserted and applied in the recent case in this Court of the *County Com'rs of Alleghany County, et al. vs. Union Mining Co., &c.*, 61 *Md.*, 545.

It appears that the supposed unjustifiable increase of assessable value complained of was $200 per acre on 500 acres of coal land, raising the assessment from $300 per acre to $500 per acre, making an aggregate increase of $100,000. And the question here is one of power and jurisdiction in the Commissioners to make such alteration; and this depends upon the construction and effect of sections 137 and 145 of Article 81, of the Code.

By the first of these sections, the County Commissioners and Appeal Tax Court are directed *annually to correct the assessment* of the property in their respective counties and the City of Baltimore; and, 1. To *alter and correct the valuation* of any property which may have been *improperly valued*, and to assess the same *at its true value;* 2. To *alter and correct* the account of any person whose property, or any part thereof, may have been *omitted in the former assessment*, or may have been *since acquired;* and, 3. If real estate or other property shall, from any cause, have *increased*, or *diminished*, largely or materially in value *since the last levy*, they shall correct, alter and amend the assessment of the same, so as to *conform to its present value.*

These are large and important powers, and no less important to the property owner than to the public at large; and therefore they should not be attempted to be exercised in an arbitrary or capricious manner; nor exer-

cised in any case without due regard to the rights of the property owner. He must have a right to be heard, and that too before his rights are determined by the only tribunal that can hear him in defence of his rights. And therefore, to avoid the possible abuse that might occur in the exercise of these powers, the Legislature, by the 145th section of the Article of the Code before referred to, has provided, that—

"*Before* increasing the assessment of any property which has heretofore been assessed, or adding any new property not valued and returned to them by the proper assessor or collector, it shall be the duty of the County Commissioners or Appeal Tax Court, as the case may be, to notify the owner of such property by a written or printed summons, containing such interrogatories in *regard to such property*, as they may require to be answered on oath, and appointing a certain day for such owner to answer such interrogatories, either orally or in writing, and make such statement, or present such proof as he may desire in the premises; and such notice shall be served on such owner, or left at his place of abode, at least five days before the day of hearing appointed in such summons; and such owner may answer such interrogatories contained in such summons, and may appear on such return day and answer the same under oath, orally, before such County Commissioners or Appeal Tax Court, and may present such testimony as he may desire, and such County Commissioners or Appeal Tax Court may think necessary and proper to be heard; and in case such owner, *after* being summoned, *shall fail to answer in writing on oath, or to appear and answer orally such interrogatories*, such County Commissioners or Appeal Tax Court, *after such return day has passed*, may proceed to revalue and re-assess such property, or add such new property, according to their best judgment and information in the premises; *but no such revaluation and*

*re-assessment shall be made* by such County Commissioners or Appeal Tax Court *without giving such notice.*"

Therefore, until the property owner was duly notified, and given an opportunity to come in and answer as to the valuation of the property proposed to be affected, or had failed to come in after receiving such notice, the Commissioners had no authority or power either to increase the valuation of property already valued and assessed, or to add thereto other property, not valued and returned to them by the proper assessors or collectors, as provided in the statute.

It is not pretended that the property here attempted to be affected had been *omitted* from the former general assessment, or that it had been *since acquired,* or that it had *increased in value* since the last levy; but the action of the Commissioners appears to have been based upon the supposition that the property had been *originally* improperly valued by the assessors. If there was reasonable or colorable ground for this supposition, it was the duty of the Commissioners to have given the notice required by the statute, and not to proceed to fix a revised and increased valuation of the property before any notice was given. There was a notice sent to the owner, it is true; but it was not such as the statute required, nor was it sent out until after the increased valuation of the property had been determined upon and entered of record. The notice given ran thus : "That your property, in District No. 12, *has been altered and corrected* as follows:

"500 acres Big Vein Coal $200,—$100,000.

"Increase on the 500 acres Big Vein Coal, which are now assessed at $300 per acre: *Unless* you appear before the board at its session of May 5th, 1891, and show cause why this *alteration should not be made, the same will stand against you,* and you will be taxed therefor at the next annual levy." This notice was dated the 20th of April,

1891; and by agreement filed in the case it is admitted, "that the coal under the land of the plaintiff stood assessed upon the assessment books of the defendants at $300 per acre from the year 1880, down to 1891, when it was increased to $500 per acre by the defendants." And though the notice was not issued until the 20th of April, the increased valuation had been made and entered of record on the 16th of April, 1891; and the Commissioners, when questioned upon the subject as witnesses, admit that they had thus fixed the increased valuation before giving the notice. This is justified upon no principle of justice, whether in a tax Court or any other Court, to say nothing of the express injunction of the statute, prohibiting such mode of proceeding.

It is urged, however, that the terms of the notice may be regarded as analogous to the order *nisi* in chancery, and may be treated in the same way. But there is in fact no such analogy. The ordinary orders *nisi* passed upon trustees' reports and auditors' reports, and others that might be mentioned, have a *prima facie* foundation of correctness; and in the absence of anything to the contrary, may well justify the Court in assuming such correctness. But here the *prima facie* foundation for future proceeding, namely, the former official assessment, is proposed to be set aside or displaced, and a new valuation substituted; and that determination is arrived at and entered of record before notice is given to the party affected; and, by the terms of the notice, he is required to come in and overthrow the previously formed judgment of the Commissioners, if he can, by proof or otherwise. This is certainly not according to any well accepted principle of due process of law, even in proceedings for the assessment of taxes.

The statute law of the State, applicable to the case, should have been complied with, and the notice given as required. That was a condition precedent to the right-

ful exercise of the power to correct the former assessment; and inasmuch as such notice as was required was not given, the increased valuation of the plaintiff's property was illegal and void.

It is admitted that the plaintiff has paid all the taxes due for the year 1891,·on the valuation of his property, as it stood assessed at the time of the attempted increase of assessment on the 16th of April, 1891; and that being so, it follows from what we have said, that the order appealed from must be affirmed.

*Order affirmed.*

