I. S. JENNEY *v.* J. W. ALDEN, M. O. OLIVER, and
G. C. LENNERT.

May Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, POWERS, and
MILES, JJ.

Opinion filed September 21, 1906.

*Annual Town Meeting—Adjournment Sine Die, without Election of Officers—Effect—Mandamus—Selectmen—Special Town Meeting for Election of Officers—V. S. 2972, 2980.*

The provisions of V. S. 2972, 2980, that a meeting of the voters shall be annually held in each town for the election of officers and the transaction of other business, at which meetings certain enumerated officers shall be chosen, are positive legislative commands. The voters are not to decide when or how often they shall hold an election.

Where the voters assembled in a duly warned annual town meeting, without electing any of the officers or transacting any of the business specified in the warning, adjourned without day, a writ of mandamus will issue, on the petition of a resident voter and taxpayer, directing the selectmen forthwith to call a special town meeting for the election of officers.

The adjournment without day in those circumstances amounted to "a failure to hold such meeting," within the intent of V. S. 2972, providing that, "A failure to hold such meeting shall not prevent the election of town officers at any subsequent meeting legally warned and holden."

PETITION FOR MANDAMUS to compel selectmen to call a special town meeting for the election of officers, brought to the Supreme Court for Addison County at its May Term, 1906, and then heard on petition, answer, and testimony taken and filed.

The second petition presented to the defendants was the petition signed by O. C. Huntley and others, and required defendant to call a special town meeting "for the following purposes." Then follows an exact copy of the several articles in the warning of the annual meeting which was adjourned without day.

*Davis & Russell* for the relator.

*Butler & Moloney* for the defendants.

The result of the adjournment was to make all officers previously elected hold over for another year. Hence, as there were no vacancies to fill, the meeting which the petition asked defendant to call would be fruitless, and, therefore, not lawful. *Cummings* v. *Clark,* 15 Vt. 654; *Sch. Dist.* v. *Smith,* 67 Vt. 566; 5 Am. & Eng. Enc. 106.

POWERS, J.   This is a petition for a writ of mandamus brought against the selectmen of the town of Leicester by a voter and taxpayer therein, to compel such selectmen to call a special meeting of that town for the election of officers and the transaction of other business.

It appears that the defendants were duly elected selectmen of the town of Leicester at the annual meeting of that town in 1905.   As such, they duly warned the March meeting of 1906 to be held at the town hall of the town on the first Tuesday of March at one o'clock in the afternoon, at which time and place some ninety-four or more of the legal voters assembled, and, without electing any of the officers required by law then and there to be chosen, or considering or transacting any of the business specified in the warning for such meeting, adjourned without day.   On the following day, March 7, a petition signed by six legal voters of the town was presented to these selectmen requiring them to call a special meeting of the voters of the town for the election of town officers.   The defendants did not comply with this application, but called a special meeting "to see if the voters of the town will raise sufficient money to defray the expenses of the town for the ensuing year," only.   Thereupon, another petition was presented to the defendants signed by more than six legal voters of the town requiring them to call a special town meeting for the election of officers and the transaction of other business such as is usually passed upon at March meetings.   This application has been ignored by the defendants, and this proceeding is instituted to compel the defendants to call a special meeting under this last named petition.

Our statute (V. S. 2972) provides that a meeting of the voters shall be held in each town on the first Tuesday of March, annually, for the election of officers and the transaction of

other business, and (V. S. 2980) that certain enumerated offi-cers shall be chosen at such annual meetings.   These are posi-tive legislative commands.   It is not left to the voters to decide when and how often they shall hold an election.   The time is definitely fixed by law, and a plain duty put upon the voters to act accordingly.   And were it not for the last clause of the section of the statute first above referred to, providing that a failure to hold such annual meeting should not prevent the election of town officers at any subsequent meeting legally warned and holden, a town would, in the event that no election was had on the day specified, be powerless to elect officers until the next annual meeting, and the old officers would hold over throughout the year as provided in the section last above re-ferred to.

Since "a failure to hold such meeting" affords the only legal ground for an election of town officers at "any subsequent meeting," the case turns on the character of the meeting held in Leicester on the first Tuesday of March last as hereinbefore recited.

It cannot be fairly said that any such meeting as the statute contemplates and requires was held.   True the voters assem-bled, but they refused to hold the meeting in any proper sense, and adjourned it in disregard, if not in defiance of the plain mandate of the law.   We put little stress on the question whether the adjournment was taken with intent on the part of the majority to circumvent the will of the voters in the matter of town officers, for the result is the same whatever the motive, —the rights of the minority are disregarded and the law de-frauded.   The case of *Stone et al.* v. *Small et al.,* 54 Vt. 498, is much in point and the reasoning of the Court therein especi-ally applicable.   The charter of the village of Winooski re-quired its officers to be elected at its annual meeting to be held

on a day specified.   An amendment enacted in 1880 made some changes in the officers to be chosen at the annual meeting, and provided that each of the three wards of the village should elect two of the trustees and one of the fire wardens, instead of those officers being elected by general vote of the voters of the whole village as before.   At the annual meeting in 1881, a majority being opposed to the change, adjourned the meeting from time to time and finally without day, without electing officers or doing any business,—the old officers holding over under the terms of the charter.   At the annual meeting in 1882, the majority, still being opposed to the change, adjourned the meeting without day.   But the minority stayed in the hall, reorganized the meeting and elected a board of trustees in conformity with the new requirements of the charter.   The validity of this election being tested by mandamus proceedings in behalf of the new trustees to obtain from the old board the books and papers belonging to the office, it was held that the action of the majority was unlawful and that the new trustees were legally elected.   The Court adopts the New Hampshire rule laid down in *Kimball* v. *Marshall,* 44 N. H. 465, wherein Bell, C. J., in speaking of assemblies upon which the law casts the performance of certain duties on particular days, says: "It must either be held that the body, once assembled, cannot adjourn till the business is done, or that so many as are ready to perform the duty shall be competent to continue the meeting until the object is accomplished.   Of these consequences, both may be held to follow under circumstances. The majority could make no legal adjournment to such a time as would defeat the performance of the prescribed duty; and a minority might keep the meeting in existence by adjournments till the duty was done."   This is conclusive of the question before us unless the minority lost their rights by dispersing

without action.   And we think the minority lost nothing by this, for the adjournment was unauthorized and illegal.   We adopt the language of Judge Rowell in the Stone case, equally applicable to this: "Any other rule would open the door to great abuse of power, and place a loyal minority too much in the power of a disloyal majority."

*The petition is sustained with costs.   Let a writ of mandamus issue directing the defendants as selectmen to call forthwith a special meeting of the voters of the town of Leicester for the election of the officers and the transaction of the business specified in the petition of O. C. Huntley and others set forth in this petition.*