(No. 13553.—Judgment affirmed.)

THE PEOPLE *ex rel.* Roy A. Bracher, County Collector, Appellant, *vs.* ROGER S. VAIL *et al.* Appellees.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

TAXES—*what is not a compliance with statutory requirement for notice before increase in valuation.* The provision of the Revenue act requiring the board of review to give notice and an opportunity for a hearing before making an increase in the valuation of lands is not complied with where the record shows only one resolution by the board, which provided "that the board proceed to raise the present real estate values" a certain per cent, and that afterwards the required number of land owners were notified to appear to answer why the assessment should not be increased, as such a resolution is equivalent to a final determination of the question in advance of the hearing.

APPEAL from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding.

JAMES G. WELCH, State's Attorney, (F. F. & J. V. NORCROSS, and ARTHUR BULKLEY, of counsel,) for appellant.

E. S. GAIL, B. W. SCHUMACHER, and H. F. DICKIN-
SON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the county court
of Lake county sustaining objections of appellees to judg-
ment and order of sale of appellees' lands in Highland Park
for a portion of the general taxes of 1919. To the appli-
cation of the county collector for judgment and order of
sale a large number of property owners in Highland Park
objected. The objections were numbered from 1 to 5, and
are based on the claim that the board of review on the
28th of August, 1919, increased the valuation made by the
assessor of all lands and lots in Highland Park thirty per
cent without first giving notice to objectors or to fifty prop-
erty owners of Highland Park, and because of the failure
to give notice the action of the board increasing the assess-
ment was void and the tax predicated on the illegal and
void valuation was illegal, fraudulent and void. The ob-
jectors tendered the collector eighty-two per cent of the tax
but refused to pay eighteen per cent, that being the amount
of the tax based on the increased valuation.

The case was tried on a stipulation of facts, which re-
cited that Lake county has less than 100,000 inhabitants;
that Highland Park is in said county and is situated wholly
in Deerfield township; that James Duffy was the assessor
for said township in 1919 and there was a legal board
of review in and for said county; that the assessor duly
assessed for taxation all the lands, lots and taxable prop-
erty in Highland Park and in Deerfield township and made
return of the assessment June 20 to the supervisor of as-
sessments, who revised the same, making no change in the
assessment of any tract or lot in Highland Park; that the
supervisor of assessments turned the assessment books over
to the board of review, which board kept a record of its

acts. It is stipulated the record of the board of review August 28, 1919, shows the following proceedings:

*"August 28, 1919.*

"Board met as per adjournment, all members present. Minutes of previous meeting read and approved. On motion of Coulson, seconded by Lamb, the following resolution was unanimously adopted:

" 'Whereas, a careful investigation of real estate values by the board makes it evident that said values should be increased generally throughout the county; and whereas, owing to the lack of time and adequate facilities the board finds it impossible to make a county-wide re-assessment on an equalized basis; therefore

" '*Resolved,* that the board proceed to raise the present real estate values (including improvements) on all property within the corporate limits of Lake Forest and Highland Park 30%, and that the values on farm lands (without improvements) be increased on a percentage basis, as follows: Antioch 25%; Avon 30%; Newport 20%; Lake Villa 30%; Wauconda 15%; Grant 30%; Warren 15%; Fremont 5%; Cuba 10%; Ela 15%; Vernon 10%.'

"On motion board adjourned to August 29, 10 A. M.

R. S. BARNUM, *Clerk.*"

Afterwards, and before signing the affidavit required by law of their acts and doings, the board added to the value of all lands and improvements in Highland Park as fixed by the assessor thirty per cent. The board did not at any time before adopting the resolution of August 28 notify the objectors or either of them, or any property owners in Highland Park, of the proposed increase or that it was contemplated, and said resolution was never vacated or set aside. September 6, at a meeting of the board, all members present, the record shows: "Notice sent to fifty owners of property in Highland Park to appear September 15, at 10 A. M., to answer why their assessment should not be increased." At the meeting of the board on September 15 the record shows owners of real estate in Highland Park appeared "in answer to their notice as to why their assessment should not be increased." At a meeting of the board November 18 the record shows Samuel Holmes appeared and asked for time to present facts and figures why the thirty per cent raise in Highland Park "should not stand as ordered by the board." The board adjourned to Decem-

ber 2 without acting on Holmes' request, so far as the record shows. At the meeting December 2 Holmes again appeared and made the same request, which was denied, and the record shows "the board then signed the books" and adjourned *sine die.* It is further stipulated that Holmes did not represent or appear for objectors and that none of them appeared before the board at any time. The stipulation includes the oath required to be taken by the members of the board on completion of the review of the assessment for 1919. It is also stipulated the tax commission did not order a re-assessment of any property in Highland Park in 1919, and that the taxes were extended on the valuation as increased by the board of review.

The principal question in the case is whether the record of the proceedings of the board shows a compliance with the requirements of the statute to make the re-assessment or the increase valid. The statute required the board to keep a record of its acts and proceedings, and that record cannot be supplemented or contradicted by parol testimony. Sections 34, 35 and 36 of the act of 1898, being paragraphs 328, 329 and 330 of chapter 120 of Hurd's Statutes, provide for the powers of the board to increase assessments, and require notice to the property owners and an opportunity to be heard before any increase is made. The fifth paragraph of section 35 authorizes an increase in the entire assessment in any township or part thereof or any portion of the county, but no increase shall be made "until the board shall have notified not less than fifty of the owners of property in such township, or part thereof, or portion of the county of such proposed increase and given them, or anyone representing them, or other citizens of said territory, an opportunity to be heard." Other sections provide for the manner of making the changes on the assessment books and the form of the affidavit to be made by the board. It will be seen from the record of the action of the board that before notice was given to

any property owner it adopted a resolution on August 28, 1919, that after careful investigation it was evident the valuation of real estate should be increased throughout the county, and that the board proceed to raise the value of all property in Highland Park thirty per cent. After the adoption of that resolution the board sent notices on September 6 to fifty property owners to appear September 15 and answer why the assessment should not be increased. On that day owners of real estate, not including any of the objectors, appeared, and the only action of the board shown by its record is that it adjourned to September 16. There is no record of any meeting or action of the board on that day. The next meeting of the board shown by its record was November 18, at which Samuel Holmes appeared and asked for time to present facts and figures to show why the thirty per cent increase should not "stand as ordered by the board." No action of the board appears to have been taken at that meeting on the request of Holmes, but the record shows the board adjourned to December 2, or subject to the call of the chairman. A meeting was held on December 2, at which Holmes again appeared, his request was denied, the books were signed and the board adjourned *sine die*. It is stipulated that Holmes did not at any time represent or appear for any of the objectors, nor did they, or anyone for them, appear before the board at any time.

Appellant contends the resolution of August 28 did not evidence the final action of the board in increasing the valuation; that it was prospective, only, which appears from the action of the board in giving notice to fifty property owners on September 6 to appear and answer on September 15 why the valuation of property in Highland Park should not be increased. In our opinion the resolution will not bear that construction. It does not say it is proposed to raise the valuation, but it was resolved that the board proceed to raise the valuation thirty per cent. That seems

to express the final determination of the board, and the board appears to have so regarded it, for its record shows Holmes appeared before it on November 18 and asked for time to show why the thirty per cent increase "should not stand as ordered by the board." There is no record of any previous action of the board ordering the increase except the resolution of August 28. The request of Holmes was denied December 2, and the only other record of the action of the board is that on that day it signed the books and adjourned *sine die*. It is significant that the record of the board contains no order other than the resolution, of the decision of the board to increase the assessment. Notwithstanding it subsequently gave notice to fifty property owners and fixed a time for hearing, the board evidently regarded its resolution as the final decision of its determination to increase the assessment and made no other order or record of its decision, but the increase remained as fixed by the resolution. The case is unlike one where a resolution of the board expressed its opinion that the valuation should be increased and then proceeded in compliance with the statute to give notice of a time and place for a hearing to determine whether the valuation should be increased. The resolution here fixed the amount of the increase, and the board proceeded on the theory that that was a final determination, subject to be reconsidered if the property owners could show it was wrong. It was equivalent to a final determination of the question in advance of the hearing, and unless the board could be convinced the decision was wrong it should stand. That was not a compliance with the purpose and spirit of the statute requiring notice and an opportunity to the property owners to be heard. They were entitled to a hearing before the question was decided, but they were not given that privilege.

In our opinion the county court correctly sustained the objections, and its judgment is affirmed.

*Judgment affirmed.*