THE PEOPLE *ex rel.* JACK R. COURSHON, Plaintiff-Appellant, *v.* TED HIRSCHFIELD *et al.*, Defendants-Appellees.

Fourth District   No. 13149

Opinion filed November 18, 1976.

CRAVEN, J., dissenting.

Stanford E. Gass, of Stanford E. Gass, Ltd., of Chicago, and William M. Goldstein, of Gaston & Goldstein, of Urbana, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Frederick M. Grosser, Assistant State's Attorney, Douglas Sauter and Jean Arnold, law students, of counsel), for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal arises out of a mandamus action in which plaintiff appellant asserted that the Champaign County Board of Review, which consisted

of the named defendants, had denied him certain procedural rights guaranteed by the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 482 *et seq.*).

In August 1974, plaintiff filed three real estate assessment complaints, each of which requested a hearing. The record does not indicate that the taxing authorities had increased the assessed valuation of his parcels; and, indeed, it does show by strong implication at least, that the assessments had not been increased. Nonetheless, plaintiff chose 1974 as the year in which to request that assessments on his properties be reduced. On October 14, 1974, without having sent notice of a hearing, the board sent a notice of ruling for each parcel. It had ruled *ex parte* against lowering the assessments of two parcels and granted a reduction on one, but plaintiff felt the reduction was inadequate. On each notice of ruling the board included the following statement:

> "If you are not satisfied you may call said Board of Review for an appointment * * * on or before October 30, 1974.
>
> Failure to call for an appointment or appear on or before the time indicated will forfeit your right to a hearing on this complaint."

Plaintiff contacted the board on October 31, one day after the deadline; and the board denied his request for a hearing. On December 9, plaintiff filed a petition for mandamus "and other relief." In this petition he alleged, in essence, that the board had made a conclusive determination prior to granting a hearing and that the board had not adopted or published any rules by which plaintiff could be granted a hearing. He prayed that mandamus issue to compel the board to grant a hearing on the complaints. The trial judge granted a hearing on the petition on December 19, 1974. On January 9, 1975, he entered an order denying the relief sought in the petition.

However, on December 31, 1974,—after the hearing but before the order—plaintiff filed, with the clerk of the court, a "First Amendment to Petition for a Judgment for Issuance of Writ of Mandamus and Other Relief." In this document plaintiff realleged all that was in his original petition but also alleged, in effect, that the actions of the board were a nullity because it was composed of only two members, whereas the statute (Ill. Rev. Stat. 1973, ch. 120, par. 489) required three, and that the board of review failed to give plaintiff proper notice of his right to appeal to the board of appeals because it failed to use the language set forth in section 109a of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 590.1), *i.e.,* that:

> " 'You may appeal this decision to the Property Tax Appeal Board by filing a petition for review with the Property Tax Appeal Board within 20 days after this notice is mailed to you or your agent, or is personally served upon you or your agent.' "

In this amendment plaintiff again prayed for mandamus but also prayed, in the alternative, that the court itself set the complaints for a hearing, enter final decisions on them, and "take other necessary action to permit Petitioner to seek review, judicial or otherwise, of the Board's actions, rulings and decisions."

On January 7, 1975, plaintiff filed a motion for rehearing and his motion to amend the petition. On January 9, he filed an amended motion for rehearing. On the same day, after a hearing on all the motions, the judge entered the written order denying the original petition and ruled on the others. By written orders filed January 29, he then denied the motion to amend the petition for mandamus because it raised issues not before the court on December 19, the date of the hearing on the original petition, and did not seek to merely amend pleadings to conform with the proof. (Ill. Rev. Stat. 1973, ch. 110, par. 46(3).) He granted the motion for rehearing only insofar as it sought rehearing of the issues contained in the original mandamus petition. He had, of course, reheard those issues on January 9.

In his brief on appeal, petitioner now makes the following arguments:

(1) That the board of review followed unpublished rules.

(2) That the board's issuance of a notice of ruling prior to a hearing effectively deprived petitioner of a hearing to which he was entitled.

(3) That, because the board consisted of two members whereas the statute requires three, the action in assessing the property was a nullity.

(4) That, having ruled, the board failed to give petitioner the prescribed statutory notice of a right to appeal to the board of appeals.

(5) That the trial court erred in denying the petition for a writ of mandamus.

We note at the outset that arguments (3) and (4) were raised at the trial level in the amended petition only. Because the court denied leave to file the amended petition and petitioner nowhere argues the court erred in so doing, the amended petition is not properly a part of the record on appeal; and we decline to address ourselves to the merits of the substantive issues generated by it.

■■ Argument (1) is based on the language of section 13 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 494) which reads as follows:

"The county assessor, board of appeals, board of assessors and the boards of review shall make and publish reasonable and proper rules for the guidance of persons doing business with them and for the orderly dispatch of business."

The rules published by the board of review are set forth below.[1]

[1] RULES AND REGULATIONS COURT HOUSE - URBANA, ILLINOIS JUNE 3, 1974. The Board of Review of Champaign County met June 3, 1974 in the Court House at Urbana, Illinois for the purpose of organizing said Board for the transaction of business for the year 1974.

The following rules and regulations were adopted:

The Champaign County Board of Review will be in session in Room 1 in the County Court House in Urbana, Illinois, during the hours 9:00 A.M. to 12:00 A.M. and from 1:00 P.M. to 4:00 P.M. Monday through Friday, except holidays of each week. Complaints will be received on Personal Property and Real Estate during the period BEGINNING July 1, 1974 and ENDING at 4:00 P.M. on August 30, 1974.

Township assessors, requesting review of any assessments in their townships, shall file such requests with the Board of Review prior to August 30, 1974.

Two members of the Board shall constitute a quorum for the transaction of business.

All complaints of individuals relating to the assessments of Personal Property or Real Estate must be made on proper complaint forms, signed and sworn to, stating a reasonable cash value on such property, address of complainant given and filed with the Chief Clerk of this Board.

Such petitions and complaints shall be numbered by the clerk and filed in regular order as received.

The Clerk of the Board shall keep a docket showing the number of each petition or complaint filed with said Board for the reduction or increase of assessed valuations, in the order of the filing of same, and the name of the petitioner or complainant and the action of the Board thereon.

Each owner or complainant may appear either in person or by his attorney.

All persons, whether owner, complainants or witnesses, introducing information or evidence to or before said Board, shall first be sworn for that purpose.

When parties complaining have property involving two or more parcels, about which complaint is made, separate complaints shall be filed for each parcel.

Complaints may be made concerning the increase or reductions of the entire assessment, whether real or personal property, or both, or of any class thereto, but such complaint must state facts as will enable the Board to determine whether or not the assessment has been made upon the proper basis.

Claims for exemptions on any property must be filed with the Board of Review during the period BEGINNING July 1, 1974 and ENDING at 4:00 P.M. on August 30, 1974. Any Exemptions approved by the Board of Review are subject to approval by the Department of Local Government Affairs.

Homestead Exemptions will be accepted by the Board of Review until August 30, 1974. Any Homestead Exemptions approved by the Board of Review are subject to approval by the Department of Local Government Affairs.

No Certificate of Error will be issued for a 1973 assessment for errors in judgment as to valuation.

Complaints as to the inequality of assessments between Townships of any portion of the County may be made, but said complaints shall contain such facts as will enable the Board to equalize the same, providing it does not exceed twenty-five per cent of the total equalized assessment of the township.

Where a complaint is filed against one item of property of a complainant, the Board may view all assessments against said complainant.

The Board of Review shall assess all property, real or personal, that may have been omitted in the assessment of any year or number of years and the same when discovered shall be listed and assessed by the Board in its review of assessments.

The Board of Review shall keep a record of proceedings pertaining to the original complaint before it and all evidence offered in connection therewith, to be certified to the Property Tax Appeal Board when requested, and the Clerk of the Property Tax Appeal Board shall cause such information to become a part of such appeal proceedings and records.

Petitioner's argument, which is somewhat ambiguous in itself, boils down to the contention that because the board did not advise complainant in the published rules that after petitioner had been notified of the disposition of his complaint, he would then have to take the affirmative step of requesting a hearing, the board failed to comply with section 13. We disagree. In essence the relevant portions of the rules told taxpayers when, where, and how to file their complaints. They told them the complaints would be filed and heard in sequence and that they were welcome to appear and argue their cases. Granted, they did not mention that if the board ruled on a complaint and the taxpayer wished a hearing, he would have to so advise the board. The notice of ruling later sent by the board did do this, however. The published rules very likely omitted many other procedural rules, but the statute does not require elaborate enumeration of all procedural details. It is designed to guarantee "guidance of persons doing business" with the board. The board, in publishing the rules it published, conformed with the requirements of the statutes.

■■ Argument (2) is that the board's issuance of a notice of ruling prior to a hearing effectively deprived petitioner of a hearing to which he was entitled. In a case in which a board proposes to increase an assessment, the statute clearly provides a right to a hearing. (Ill. Rev. Stat. 1973, ch. 120, par. 589.) Moreover, if a board meets in such a case and adopts a resolution equivalent to a final decision to make the increase before granting the hearing, the supreme court has held that the complaining taxpayers are, in effect, deprived of a hearing. (*People ex rel. Bracher v. Vail* (1920), 296 Ill. 61, 129 N.E. 494.) In such a case, the remedy granted by the court is simply a denial of the increase. *Vail.*

In this case, however, no increase in assessments is involved. Petitioner simply chose 1974 as the year in which to complain. At best, section 108 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 589) is ambiguous on the issue of whether petitioner is entitled to a hearing at all although *People ex rel. Ahlschlager v. Board of Review* (1933), 352 Ill. 157, 185 N.E. 248, strongly suggests such a right exists. For the sake of argument, here, we will assume the right does exist, particularly because petitioner's complaint form, provided by the board, specifically requests a hearing. That being the case, *Vail* would dictate that we find petitioner was effectively denied the hearing because the board took decisive action before notifying him and allowing him to make his case. It made a

---

These rules may be amended at any time by giving one day's notice, specifying the proposed amendment.
W.E. Weber, secretary
CHAMPAIGN COUNTY BOARD OF REVIEW
372-June 10, 11, 12, 1974

decision and invited petitioner only to try to change the board's mind. *Vail* prohibits such a procedure.

The difficulty in this case, however, is that we cannot simply invalidate an assessment increase as the *Vail* court did. No increase is involved. Hence, the only remedy available in this mandamus action is to compel the board to grant a hearing despite the fact that, the decision having been made, petitioner would probably have faint chance of changing the board's mind. The legislature has provided no other remedy.

■■ Thus, we are brought to the mandamus issue. As a general rule, mandamus should issue to compel a board of review hearing if complainant has been effectively denied that hearing. *Ahlschlager.*

However, mandamus will not issue to compel the doing of an act where the record discloses that the person or entity whose compulsion is sought is willing to perform the act freely and without compulsion. (*White v. Board of Appeals* (1970), 45 Ill. 2d 378, 359 N.E.2d 51.) In this case the board was willing to grant the after-the-fact hearing which we have found to be the only remedy available in this mandamus action. It imposed only one limitation, that being that the petitioner notify the board by October 30 of its desire to be heard. We do not find that limitation unreasonable. Because the board was willing to act, but petitioner, for some unexplained reason, failed to avail himself of the opportunity, the trial court properly denied the petition for mandamus.

In summary, the board published rules which were sufficient to meet the requirements of section 13. Assuming petitioner was entitled to a hearing on his complaint, he was effectively denied that privilege when the board made its *ex parte* decision. It later offered a hearing in which petitioner could, in effect, only try to change the board's mind. *Vail* condemned this procedure. Yet the only remedy we can give and the only one plaintiff seeks on appeal is that we order the trial court to issue a writ of mandamus to compel the seemingly futile hearing. Because the board was willing to grant the hearing, mandamus cannot issue.

Affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I dissent.

The petitioner filed a complaint and was entitled to a hearing. The majority opinion "assumes" that the petitioner was entitled to a hearing. Instead of a hearing, the Board of Review, without a hearing and upon

some unknown basis, entered *ex parte* orders denying relief in two instances and lowering an assessment in the other instance.

The Board then in effect said, "You have your decision, now do you want a hearing?" Such procedure is not in accordance with the statutory scheme, not in accordance with the case law, and not in accordance with any semblance of due process. The statutory language now applicable, being section 108 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 589(4)), is essentially the same as the statutory language under consideration in the case of *People ex rel. Ahlschlager v. Board of Review* (1933), 352 Ill. 157, 185 N.E. 248. The court there stated:

> "These provisions of the statute imposed the duty upon the board of review to grant a hearing to each of the relators in this case upon his complaint filed with that board." (352 Ill. 157, 168, 185 N.E. 248.)

The court then made reference to two earlier cases under the Revenue Act of 1872 that reached the same conclusion.

Thus, we need not "assume" that the petitioner has a right to a hearing because the right is absolute. The backward procedure here employed is neither permissible nor desirable. The petitioner was entitled to a hearing in a neutral forum and mandamus should have issued to compel such procedure and such a hearing. The fact that the Board of Review tendered an after-the-fact hearing is, in my opinion, irrelevant.